James L. WORTHINGTON, Plaintiff,

v.

UNITED STATES, Defendant.

No. 96–61C.

United States Court of Federal Claims.

Nov. 5, 2001.

Terry J. Thomas, Reno, Nevada, for the plaintiff.

Hillary A. Stern, Washington, D.C., with whom were Mark A. Melnick, Assistant Director, David Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, and David G. Ogden, Assistant Attorney General, for the defendant.

### OPINION

SMITH, Senior District Judge.

This case returns to this court on remand of the Federal Circuit after reversal of the initial decision on jurisdiction in *Worthington v. United States*, 41 Fed.Cl. 181 (1998). Plaintiff seeks overtime pay under the Back Pay Act, 5 U.S.C. § 5596 (1988 & Supp.2001), based upon his reassignment by the United States Forest Service to a compressed work schedule. Plaintiff's claim is before the court on cross motions for summary judgment. Because plaintiff failed to show that working the compressed schedule resulted in a loss of "pay, allowances or differentials," in addition to the fact that the claim is barred by the doctrine of res judicata and in large part by the statute of limitations, plaintiff's motion is DENIED and the government's cross motion is GRANTED.

The court's jurisdiction in such matters under the Tucker Act, 28 U.S.C. 1491(a)(1) (1988 & Supp.2001), remained in place after the enactment of the Civil Service Reform Act (CSRA), except where the underlying personnel action is covered by the CSRA. The Federal Circuit has determined that plaintiff's claim is not within the coverage of CSRA and that it falls instead within this court's Tucker Act jurisdiction. *Worthington v. United States*, 168 F.3d 24 (Fed.Cir. 1999).

### FACTS [1]

Plaintiff was employed by the United States Forest Service as a Civil Engineering Technician for approximately 15 years. In 1986, plaintiff was informed that his position

at Tahoe National Forest was unfunded. He was then transferred to Angeles National Forest. Following the transfer, plaintiff received poor performance ratings, was denied a within-grade increase, and was ultimately removed from his position in August 1990 because of unacceptable performance.

In a March 23 1988 letter of instruction, plaintiff's supervisor directed him to begin working a compressed work schedule, also called a "5–4–9" work schedule. Plaintiff's new schedule required him to work 80 hours every two weeks as he had previously done. Under the "5–4–9" schedule, however, plaintiff worked one eight-hour day and eight nine-hour days during each two week period. Every other Monday plaintiff would work eight hours. Every other Friday plaintiff would not work. Plaintiff worked nine hours on all other weekdays.

In her letter of instruction, plaintiff's supervisor indicated that she was placing him on the compressed work schedule because of her need to "have confidence in your being on the job when needed." Her letter noted plaintiff's "pattern of taking sick and annual leave without prior approval."

Plaintiff claims that he initiated a verbal complaint on March 24, 1988. He then filed an "informal EEO complaint," a grievance letter, with Don Garwood, his Equal Employment Opportunity Counselor at Angeles National Forest, on March 28, 1988. In his grievance letter plaintiff requested that he be paid for "overtime that [my supervisor] specifically prohibited me from working." He stated that he believed he had been unlawfully placed on a compressed work schedule in violation of the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. § 6127 (1988), and requested that the letter of instructions be withdrawn. He also requested overtime for 16 hours spent preparing the grievance letter. In his grievance letter plaintiff complained that his supervisor treated "white males differently (unfairly) than the way she treats the minorities that

---

**1.** These facts are taken from the court's previous decision in *Worthington v. United States,* 41 Fed. Cl. 181 (1998).

work for her." Plaintiff filed a formal discrimination complaint with the Department of Agriculture's Equal Employment Office ("EEO") on May 2, 1988, in which he requested a hearing before an Administrative Judge appointed by the U.S. Equal Employment Opportunity Commission (EEOC).

On April 2, 1990, pursuant to plaintiff's discrimination complaint, the Forest Service rescinded and canceled the letter of instruction, relieved plaintiff from the compressed work schedule, apologized, and allowed him to choose his own work schedule. The April 2 letter used the term "unwarranted action," possibly with reference to having placed plaintiff on a compressed work schedule. Nevertheless, plaintiff chose to continue to work the compressed "5–4–9" work schedule until his removal in July 1990. The final decision on plaintiff's discrimination complaint, issued by Deputy Secretary of Agriculture Jack Parnell on March 29, 1990, found no evidence of discrimination or reprisal by the agency when it denied plaintiff's overtime request.

Plaintiff did not file an appeal of the final decision on his discrimination claim with the EEOC nor did he file a civil action in federal district court although Mr. Parnell's letter advised plaintiff that these avenues for appeal were open to him. Instead, on April 27, 1990, he wrote to Mr. Thomas Brown, Forest Service Regional Personnel Officer, to request additional relief including overtime for his nine hour days and payment for his Fridays off. Thomas Beaumont, Supervisory Equal Employment Specialist, responded to plaintiff's request for additional relief on August 02, 1990. Mr. Beaumont noted that,

Deputy Secretary Parnell's decision on your complaint found that rescission of the March 23, 1988 letter of instruction, apology for the letter, and future approval of your request for alternate work schedules, constituted full relief for the stated issues. You had the right to contest the decision by filing an appeal as stated in the decision. While the letter of instructions did establish a specific tour of duty, it did not instruct you to work any overtime hours or create any overtime hours. It was a 5–4–9 work schedule, and your work requirement

continued to be 80 hours per pay period. Your overtime entitlement was contingent on the tour of duty to which you were assigned.

Establishment of a particular tour of duty did not deprive you of any hours of work; it merely placed them at different points in the pay period.

The April 11, 1988 letter to you does not prohibit you from working overtime, but defines a requirement that all overtime must be approved and ordered in advance.

Plaintiff appealed the agency's denial of overtime pay for working a compressed work schedule to the Office of Special Counsel and to the Merit Systems Protection Board (MSPB or "the board"). On June 11, 1991, MSPB Administrative Judge Liggett found that "[p]lacing appellant on a compressed work schedule, allegedly against his wishes, was error, but under all the circumstances of this case it was harmless. As noted above, when provided an opportunity to choose his own work schedule, appellant chose the identical 'compressed' work schedule." Plaintiff appealed to the Federal Circuit which, on February 10, 1992, affirmed the decisions of the MSPB and the Forest Service. With respect to plaintiff's compressed work schedule, the Federal Circuit agreed with the MSPB that plaintiff "cannot show that this error was harmful." *Worthington v. Department of Agriculture*, 956 F.2d 1172, 1992 WL 20819 at *2 (Fed.Cir.1992) (unpublished table decision).

In November 1991 plaintiff petitioned the EEOC to review the board's decision. In its June 8, 1992 decision letter, the EEOC concurred with the board's findings and noted that Administrative Judge Liggett had found that plaintiff lacked credibility and that his EEO complaints were "baseless and without merit." Administrative Judge Liggett had also described plaintiff's filings as "an abuse of the EEO process."

### DISCUSSION

As preliminary matters, defendant avers that plaintiff's claim is barred by the doctrine of res judicata and the Tucker Act's statute of limitations. For the following reasons, the

court finds both of these doctrines applicable in this case.

## I. Res Judicata

■ The issue here is whether plaintiff's previous suits are a bar to this litigation. In deciding this issue, courts have relied on the following three-part test for determining if res judicata should apply: 1) are the parties legally identical; 2) are the transactions or events underlying the claims substantially related; and 3) did the non-moving party have a "full and fair opportunity to litigate the original claim." *Bernaugh v. United States,* 38 Fed.Cl. 538, 544 (1997) (quoting *Reidt v. United States,* 13 Cl.Ct. 741, 744 (1987)). In this case, each of the res judicata factors apply.

■ The first and second prongs of the test are easily met as plaintiff and the United States have faced one another in court many times regarding the events surrounding plaintiff's objections to the letter of instructions and denial of overtime pay. Previous suits initiated by the plaintiff related to these events have been decided by the Department of Agriculture's Equal Employment Office, the EEOC, the MSPB, the U.S. District Court for the Eastern District of California, the U.S. Court of Appeals for the Federal Circuit, and this court. Because plaintiff is suing the United States in this matter, the parties are identical and the first prong is met. Because the events underlying the claim at issue in this case are substantially related to the claims presented in previous lawsuits, the second prong is also met.

The third prong of the res judicata test is also met to the satisfaction of the court. This test examines the sufficiency and extent of the former action to determine if plaintiff had an adequate opportunity to litigate his claim. It is clear based on a review of the previous lawsuits that plaintiff had a full and fair opportunity to litigate his claim in his previous actions.

One adjudication that is emblematic of plaintiff's litigation history was conducted by the Department of Agriculture's EEO office. In this proceeding, plaintiff requested back pay for overtime allegedly worked as the result of the compressed work schedule as part of a broader discrimination claim. An Administrative Judge appointed by the EEOC presided. Seven witnesses, including the plaintiff, testified. Several exhibits and post-hearing submissions were placed in the record. Deputy Secretary of Agriculture Jack Parnell, head of the EEO office, based final decision "on the entire record, including the complaint, the report of investigation, the proposed disposition, the hearing transcript, submission by the complainant and the Agency, the AJ's recommended decision, and the action taken subsequently." In a final decision issued on March 29, 1990 by the Department of Agriculture's Equal Employment Opportunity ("EEO") office, plaintiff's request for overtime pay was denied.

The fact that this EEO decision was an administrative determination, not a judicial one, does not prevent the application of res judicata, for res judicata effect is not limited to decisions of federal or state courts. According to the Supreme Court, "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *U.S. v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). This view is now incorporated in the Restatement on Judgments 2d § 83(1) (1980). Based on a review of the EEO proceeding, it was clearly the type of administrative adjudication envisioned by the Supreme Court. An independent fact-finder presided, testimony was taken, the plaintiff testified, documentary evidence was accepted and reviewed by the agency, and a final decision was rendered on the merits.

Plaintiff's response is that the back pay claim is not barred by res judicata because, according to the Federal Circuit, the Court of Federal Claims is the appropriate forum for determining this claim under the Back Pay Act. Plaintiff is incorrect. Under the Back Pay Act's implementing regulations, agencies such as the Department of Agriculture, the EEOC, the MSPB, U.S. District Courts, and this court among others, are

authorized to award back pay. Office of Personnel Management, 5 C.F.R. § 550.803 (1988). Plaintiff filed previous actions with the EEO on May 2, 1988, the EEOC on November 21, 1991, the MSPB on February 2 and April 1 of 1991, and the U.S. District Court in California on July 15, 1992, well before seeking relief in this court on February 6, 1996. Res judicata exists in large part to prevent this type of forum shopping. Having lost in his previous contests, plaintiff cannot now seek additional review in this court of issues which have already been properly decided.

## II. Statute of Limitations

Sovereign immunity is a basic constitutional principle derived from English law at our Nation's birth. It prevents suits against federal and state governments without their consent. Congress has allowed exceptions to this immunity, most importantly for our purposes being the Tucker Act, which permits non-tort money claims to be raised against the federal government in this court. 28 U.S.C. § 1491 (1988 & Supp.2001). However, this right of action is limited in time. Claims arising under the Tucker Act must be filed within six years of the date the claim first accrued. 28 U.S.C. § 2501 (1988 & Supp.2001).

Defendant avers that plaintiff's claim is barred by the statute of limitations because it was not filed within six years from the date the claim accrued. Defendant asserts that the tolling period should begin on or after March 23, 1988, the first pay period during which plaintiff began working a compressed work schedule. Plaintiff claims that the tolling period could not have begun to run until the Department of Agriculture rescinded the letter of instructions, as this action is what gave rise to plaintiff's back pay claim in the first place.

The plain language of the Back Pay Act states that a remedy is available upon a finding by an appropriate authority that the personnel action in question was unjustified or unwarranted under some "applicable law, rule, regulation, or collective bargaining agreement." 5 U.S.C. § 5596(b)(1). Plaintiff misinterprets this language to mean that the statute of limitations begins to run only after such a finding has been made.

■■■■■ Under long-standing precedent, a claim against the government for failure to pay money "first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract." *Oceanic Steamship Co. v. United States*, 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964). Applying *Oceanic* to this case, plaintiff's claim ripened once the overtime pay he alleges is owed to him was first withheld. Although no contractual relationship exists between the federal government and its employees, it is clear by analogy that a claim under the Back Pay Act accrues once an employee is denied "pay, allowances, or differentials" to which he is allegedly entitled. As the government correctly asserts, the statute of limitations period began on or immediately after the first pay period for which plaintiff was placed on the compressed work schedule.

The Federal Circuit ratified the *Oceanic* approach when it said that "A claim first accrues and the six year statute of limitations begins to run (28 U.S.C. § 2501), 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990), (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir.1988)) (quoting *Oceanic Steamship Co. v. United States*, 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964)). The Federal Circuit also said in *Hart* with reference to the statute of limitations that "only Congress can lengthen the time period for bringing suit against the United States." *Hart* at 817.

Following the Federal Circuit precedent, as this court must do, plaintiff had to file a claim for back pay within six years of the first pay period in which he was denied overtime pay, that being March 23, 1988, because that is when all events which fix the government's liability attached. Put another way, plaintiff had to file a claim no later than March 23, 1994 to be timely. The present claim was filed on February 6, 1996. As a result, plaintiff's request for back pay accruing before February 6, 1990 is denied. The only portion of plaintiff's claim that survives

the limitations bar is a two-month period from February 6, 1990 to April 2, 1990, the latter being the day the Department of Agriculture relieved plaintiff from the compressed work schedule and allowed him to choose his own work schedule.

### III. Back Pay Act

The Back Pay Act requires that an appropriate authority find that the personnel action in question was unjustified or unwarranted under some "applicable law, rule, regulation, or collective bargaining agreement." 5 U.S.C. § 5596(b)(1). Even assuming that the Forest Service's letter rescinding the letter of instructions qualifies as a finding of an "unjustified or unwarranted" action under the Back Pay Act, for the following reasons plaintiff cannot prevail because he has not shown any loss of pay, allowances or differentials.

### A. Federal Employees Flexible and Compressed Work Schedules Act

■ Plaintiff asserts that the Forest Service failed to abide by federal statute and its own regulations governing the imposition of compressed work schedules. Plaintiff claims the compressed schedule was improperly imposed on him against his will. According to 5 U.S.C. § 6127(a), agencies are permitted to establish compressed work schedules notwithstanding the basic 40 hour workweek and eight hour day established by 5 U.S.C. § 6101 (1988). Notwithstanding the requirement under 5 U.S.C. § 5542 (1988 & Supp. 2001) that premium pay will apply to overtime after eight hours per day, 5 U.S.C. § 6128 (1988 & Supp.2001) states that no such premium pay for overtime work shall apply "to hours which constitute a compressed work schedule." In his brief, plaintiff claims that he *"was not* working a compressed work tour as authorized by Title 5 U.S.C. Section 6127" because the schedule was imposed improperly (emphasis in original).

Accordingly, plaintiff argues that he should receive premium pay for one hour of overtime on each of the days he was required to work nine hours. In addition, plaintiff seeks back pay for 8 hours every other week when he was off on Friday. Plaintiff claims he was improperly deprived of his entitlement to work a full 40 hours on those weeks. The court disagrees. Plaintiff worked a compressed "5–4–9" work schedule for almost two and a half years, including a five-month period after he was allowed to choose a different schedule. Whether or not the schedule was improperly imposed, plaintiff never worked more than 80 hours per two weeks. Yet now he seeks 16 hours of overtime for each two week period. The statute provides a remedy for those employees for whom a compressed work schedule creates a personal hardship. In this case, plaintiff presented no evidence of any hardship or loss of *any* pay that he would have received had he not worked this schedule. His own actions in accepting the schedule after it was no longer required belie his legal position. The statute states:

> Upon written request to any agency by an employee, the agency, if it determines that participation in a [compressed work schedule] would impose a personal hardship on such employee, shall—
>
> > (A) except such employee from such program; or
> >
> > (B) reassign such employee to the first position within the agency—
> >
> > > (i) which becomes vacant after such determination
> > >
> > > (ii) which is not included within such program
> > >
> > > (iii) for which such employee is qualified, and
> > >
> > > (iv) which is acceptable to the employee.
>
> A determination by an agency under this paragraph shall be made not later than 10 days after the day on which a written request for such determination is received by the agency. 5 U.S.C. § 6127(b)(2).

Plaintiff has not shown that he availed himself of this remedy. Although plaintiff filed a grievance letter with his EEO counselor, that letter fell short of a written request for a determination that the compressed schedule imposed a personal hardship on him. The letter did not specifically request that plaintiff be relieved of the

compressed work schedule. It merely stated plaintiff's (incorrect) belief that 5 U.S.C. § 6127 forbids an agency from requiring that an employee work a compressed work schedule. Plaintiff also asked for overtime pay in his letter and asked that the letter of instructions (including the compressed work schedule) be withdrawn. Most of plaintiff's grievance letter dealt with provisions in the letter of instructions other than the compressed work schedule. His grievance letter was primarily a discrimination complaint. It was only incidentally, if at all, a request pursuant to 5 U.S.C. § 6127(b)(2).

Furthermore, the statute does not guarantee that an aggrieved employee will be relieved of the compressed work schedule. The statute merely requires the agency to make a determination as to personal hardship and then act accordingly. Nothing in the statute suggests a remedy that includes treating the employee as if the compressed work schedule had never been imposed. Even if the Forest Service determined that plaintiff suffered personal hardship under the imposition of the compressed work schedule, he could still have been required to work the compressed schedule until he could be reassigned to another suitable position.

### B. Back Pay Act

█ Even if plaintiff's complaints did fulfill the written request requirement of § 6127(2), he is still not entitled to any additional compensation under the Back Pay Act. The Back Pay Act only entitles plaintiff to what he "normally would have received during the period if the personnel action had not occurred." 5 U.S.C. § 5596(b)(1)(A)(i) (1988). Deputy Secretary Parnell's final decision on plaintiff's discrimination complaint states clearly that plaintiff has already obtained full relief. His decision states that plaintiff is not due overtime pay or pay for hours he was prevented from working.

The MSPB, affirmed by the Federal Circuit, found the error of placing plaintiff on a compressed work schedule to be harmless. In this case plaintiff worked and was paid for 80 hours for two weeks while he worked the compressed work schedule. If he had not

been placed on the compressed work schedule he would still have worked and been paid for 80 hours per two week pay period. As Thomas Beaumont, a Department of Agriculture Supervisory Equal Employment Specialist, succinctly put it in his letter to plaintiff dated August 2, 1990, "Establishment of a particular tour of duty did not deprive you of any hours of work; it merely placed them at different points in the pay period."

The Back Pay Act is meant to compensate employees for losses suffered through unjustified or unwarranted personnel actions. Plaintiff has failed to show that he suffered a loss of "pay, allowances, or differentials" as a result of working a compressed work schedule. Accordingly, plaintiff is not entitled to back pay. Plaintiff's motion for summary judgment is DENIED and the government's cross motion is GRANTED. The Clerk is directed to DISMISS plaintiff's claim and to enter judgment for defendant.

**IT IS SO ORDERED.**