**Alton B. HORNBACK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–38 C.

United States Court of Federal Claims.

April 18, 2002.

Alton B. Hornback, San Diego, CA, pro se.

Susan L. Christenberry, with whom were Robert D. McCallum, Jr., Assistant Attorney General, Vito J. DiPietro, Director, Civil Division, Department of Justice, Washington, DC, for defendant. John J. Fargo, Assistant Director, Civil Division, Department of Justice, Washington, DC, of counsel.

*OPINION and ORDER*

HEWITT, Judge.

This is a takings action. Plaintiff alleges that his intellectual property was taken by the government's imposition of a secrecy order on his patent application.[1] Defendant

asserts that plaintiff's claim is time-barred and barred by the doctrines of res judicata and collateral estoppel. Before the court is Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(4). For reasons of judicial economy and efficiency, the court considers both motions. For the following reasons, defendant's motions in the alternative are both GRANTED.

## I. Background

On April 25, 1986, plaintiff filed a patent application with the Patent and Trademark Office (PTO).[2] Complaint (Compl.) at 2. On August 24, 1987, the PTO imposed a secrecy order pursuant to 35 U.S.C. § 181. *Id.*

On January 25, 1999, plaintiff filed this action seeking just compensation for the taking of his intellectual property. *Id.* at 1. Plaintiff alleges that defendant effected a Fifth Amendment taking of plaintiff's intellectual property when it imposed a security classification on his patent application, withheld the patent from issue, willfully took physical possession of that application and its subject matter, and denied plaintiff the right to possess a copy of his own patent application when his security clearance was revoked upon retirement. *See* Compl. at 1–4; Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(4) (Def.'s Mot.) at 2.

---

1. While the court declines to be distracted from its effort to secure "the just, speedy, and inexpensive determination" of this action, Rule 1(a)(2) of the Court of Federal Claims, by plaintiff's intemperate remarks in his briefing, the court expresses its dismay at such remarks. The ordinary frustrations which may attend litigation do not excuse repeated breaches of civility. *See, e.g.,* Plaintiff's Petition for Court to Remand Patent No. 6,079,666 to PTO for Reissue to Conform to Patent Application 06/859,033 at pp. 6, 7, 9; Plaintiff's Motion to Compel Discovery at pp. 4, 5; Plaintiff's Motion No. 4 for Leave to Supplement Record and Motion to Close Discovery at pp. 2, 3; Plaintiff's Motion to Compel Discovery as Amended by Leave of Court at pp. 4, 5; Plaintiff's Response to Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(4) at p. 8,

Plaintiff's Reply to Defendant's Opposition to Motion No. 4 for Leave to Supplement Record and Motion to Close Discovery at pp. 1, 2, 3, 4; Plaintiff's Response to Order of 28 February 2002 Requesting Briefing on Res Judicata and/or Collateral Estoppel at p. 7; Plaintiff's Amended Response to Order of 28 February 2002 for Briefing on Res Judicata and/or Collateral Estoppel (Pl.'s Amended Res Judicata Brief) at p. 8

2. Plaintiff filed a patent application on subject matter that had been owned by his former employer, McDonnell Douglas Astronautics. *See* Appendix to Defendant's Motion for Summary Judgment in Favor of Plaintiff and Response to Defendant's Motion to Dismiss at A1–A7; *see also Hornback v. United States,* 1996 WL 368135, *1 (9th Cir. June 25, 1996).

Defendant moves for summary judgment on the ground that plaintiff's takings claim is barred by res judicata. Def.'s Mot. at 6–10. In the alternative, defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the ground that the statute of limitations has run on plaintiff's claim. *Id.* at 11–14. Defendant also moves to dismiss plaintiff's takings claim for failure to state a claim on the ground that the Invention Secrecy Act, 35 U.S.C. §§ 181–188 (1984) (secrecy statute) [3] provides the exclusive remedy for plaintiff's alleged damages. *See id.* at 11.

Because the determination of whether subject matter jurisdiction exists is an inflexible threshold matter, the court first addresses the issue of jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); *see also Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 89 (1989) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988)).

## II. Discussion

### A. Motion to Dismiss

#### 1. Standard of Review

Rule 12(b)(1) of the Court of Federal Claims (RCFC) governs dismissal of a claim based on a "lack of jurisdiction over the subject matter." RCFC 12(b)(1). The Supreme Court has stated that in evaluating a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). When considering a motion

to dismiss, the court must presume that well-pleaded factual allegations in the complaint are true. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). If the jurisdictional facts in the complaint are disputed, however, the court may consider relevant evidence beyond the pleadings to decide the jurisdictional question. [4] *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991); *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883–84 (Fed.Cir.1985); *Reynolds,* 846 F.2d at 747.

#### 2. Statute of Limitations

Defendant moves for dismissal on the ground that plaintiff's takings claim is time-barred. Def.'s Mot. at 11. The applicable statute of limitations for filing suit in the Court of Federal Claims is six years. 28 U.S.C. § 2501 (1994) ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). The six-year limitation is "an 'express limitation on the Tucker Act's waiver of sovereign immunity.'" *Franconia Assocs. v. United States,* 240 F.3d 1358, 1362 (Fed.Cir.2001) (*quoting Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir. 1990)). In *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.1988), the Federal Circuit observed that the six-year limitations period for actions against the United States "is a jurisdictional requirement attached by Congress" that must be strictly construed. *See also Seldovia Native Ass'n v. United States,* 144 F.3d 769, 774 (Fed.Cir.1998) (stating that

---

**3.** The secrecy statute was amended in 1999 by Public Law 106–113, 113 Stat 1501. But those amendments did not become effective until March 2000, more than one year after plaintiff filed this action.

**4.** Because plaintiff has filed and prosecuted multiple lawsuits seeking compensation for damages he alleges stem from the government's imposition of and renewal of the secrecy order on his patent application, the evidentiary record regarding plaintiff's claim is well-developed. *See, e.g.,*

*Hornback v. United States,* 40 Fed.Cl. 524 (1998), *aff'd,* 1998 WL 804567 (Fed.Cir. Nov.18, 1998); *Hornback v. United States,* 36 Fed. Cl. 552 (1996); *Hornback v. United States,* Civ. No. 94–952–IEG, slip op. (S.D.Cal. Sept. 21, 1995), *aff'd,* 1996 WL 368135 (9th Cir. Jun. 28, 1996) (unpublished opinion); *Hornback v. United States,* Civ. No. 89–1914–R (M), slip op. (S.D.Cal. Oct. 2, 1992), *aff'd,* 1993 WL 528066 (Fed.Cir. Dec.22, 1993) (unpublished opinion), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994).

"statute of limitations issues ... are jurisdictional").

To survive defendant's motion to dismiss this case, plaintiff must establish "jurisdictional timeliness." *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Plaintiff cannot rely merely on the allegations in the complaint. *Reynolds,* 846 F.2d at 747. Because plaintiff bears the burden of proof by a preponderance of the evidence, Mr. Hornback must offer relevant, competent evidence to show that he filed suit within six years of the accrual of his takings claim. *See* 28 U.S.C. § 2501; *Reynolds,* 846 F.2d at 748; *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001).

a. Determining the Date of Accrual

█ Determining whether plaintiff's takings claim is time-barred requires the court to ascertain when the plaintiff's cause of action first accrued. A plaintiff has a "legal right to maintain his or her action" when the plaintiff's cause of action first accrues. *Catawba Indian Tribe of S.C. v. United States,* 982 F.2d 1564, 1570 (Fed.Cir.1993) (quoting 1 Calvin W. Corman, *Limitations on Actions* § 6.1, at 370–71 (1991)). The Federal Circuit instructs that "a claim [against the United States] 'first accrues' when all the events have occurred which fix the alleged liability of the defendant." *See Hopland Band,* 855 F.2d at 1577. The key date for accrual purposes is that date on which plaintiff's property "has been clearly and permanently taken." *Boling v. United States,* 220 F.3d 1365, 1370 (Fed.Cir.2000). The "proper focus, for statute of limitations purposes, 'is upon the time of the [defendant's] *acts,* not upon the time at which the *consequences* of the acts became

most painful....'" *Fallini v. United States,* 56 F.3d 1378, 1383 (Fed.Cir.1995) (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). "[W]hether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Fallini,* 56 F.3d at 1380 (citing *Menominee Tribe v. United States,* 726 F.2d 718, 721 (Fed.Cir.), *cert. denied,* 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984)).

b. The Secrecy Statute

Section 181 of the secrecy statute, set forth at 35 U.S.C. §§ 181–188 (1952), mandates that the Commissioner of Patents (Commissioner) place a secrecy order on certain inventions for which a patent application is pending.[5] 35 U.S.C. § 181. While section 181 of the secrecy statute prohibits the imposition of a secrecy order or the withholding of a grant of a patent "for a period of more than one year," that same statutory provision also compels the Commissioner to "renew the [secrecy] order at the end [of the one year period], or at the end of any renewal period, for additional periods of one year upon notification by the head of the department or the chief officer of the agency who caused the order to be issued that an affirmative determination has been made that the national interest continues so to require." *Id.*

On August 24, 1987, the PTO first imposed a secrecy order on plaintiff's patent application (the August 1987 secrecy order or the original secrecy order), sixteen months after Mr. Hornback filed his application with the PTO. Appendix to Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and

---

5. Section 181 of the secrecy statute states:
Whenever publication or disclosure ... by the grant of a patent on an invention in which the Government has a property interest might, in the opinion of the head of the interested Government agency, be detrimental to the national security, the Commissioner [of Patents] upon being so notified shall order that the invention be kept secret and shall withhold the ... grant of a patent therefor under the conditions set forth hereinafter.

35 U.S.C. § 181 (1952). Once the agency or department head who caused the secrecy order to be issued makes a "proper showing ... that the examination of the application might jeopardize the national interest," the Commissioner shall maintain the application in a sealed condition and provide notice thereof to the patent applicant. *Id.*

12(b)(4) (Def.'s Mot.App.) at A11–12. The August 1987 secrecy order specifically stated that "the above-identified patent application has been found to contain subject matter which discloses classifiable information." *Id.* at A11. The August 1987 secrecy order also stated that "[t]he subject matter of the above-identified application has been determined to be encompassed by E.O. 10865, entitled 'Safeguarding of Classified Information Within Industry' or E.O. 12356, entitled 'National Security Information' and thus is subject to the 'Industrial Security Manual for Safeguarding Classified Information.' "[6] *Id.* at A12. The August 1987 secrecy order clearly stated that "[t]he declassification, in whole or in part, of the subject matter of the above-identified application does not modify this Secrecy Order. The requirements of this Secrecy Order remain in effect until the Secrecy Order is rescinded or modified by the Commissioner of Patents and Trademarks." *Id.*

### c. Summary of the Parties' Arguments

Defendant argues that plaintiff's alleged taking claim accrued when the PTO imposed

---

6. Executive Order 12356 prescribes a uniform system for classifying and safeguarding national security information and directs that national security information shall be classified at one of three security levels—top secret, secret or classified—by the properly designated classification authority. 3 C.F.R §§ 1.1, 1.2. "National security information" is "information that has been determined pursuant to [E.O. 12356] to require protection against unauthorized disclosure and that is so designated." *Id.* at § 6.1(c). The duration of the classification shall be "as long as required by national security considerations." *Id.* at § 1.4(a).

7. In support of its position, defendant points to an admission by plaintiff in his briefing in a 1996 action filed with this court in which plaintiff sought damages under the secrecy statute in connection with the same patent application at issue in this case. Def.'s Mot. at 13. With respect to the 1993 renewal of the secrecy order, plaintiff stated:

> The term "CLASSIFIABLE" was first applied and defined in the "Corrected Copy" of the SECRECY ORDER on 22 October 1993 .... [to] designate[ ] subject matter that is not actually classified but is considered sufficiently sensitive ... to have been properly classified under E.O. 12356 if the subject matter were owned by the U.S. Government.
> It is ... clear that that definition was contrived ... to circumvent the "just compensation"

---

the August 1987 secrecy order "because the implementation of this secrecy order prevented the patent from issuing and denied plaintiff access to his application after he no longer possessed a security clearance." Def.'s Mot. at 12–13. Defendant further argues that "[n]o change in the level of classification or the designation of information as 'classified' or 'classifiable' altered the implementation of the secrecy order in any respect related to plaintiff's assertion that the government's taking resulted in prevention of the patent from issuance and denial of his access to his application."[7] *Id.* at 13.

Defendant states that the August 1987 secrecy order remained in effect until the PTO rescinded it on April 21, 1999. *Id.* at 12; Def.'s Mot.App. at A13. Because the patent application remained classified and subject to the August 1987 secrecy order until 1999, defendant contends that plaintiff's alleged takings claim resulted from a single government action and therefore cannot be considered under the continuing claim doctrine.[8] Def.'s Mot. at 13. Defendant asserts that

---

> mandated by the Fifth Amendment for the "taking" of private property.... *[T]he word "CLASSIFIABLE" is clearly misplaced here, since that subject matter has already been classified and, thus, is now owned by the U.S. Government.*

Def.'s Mot. at 13; Def.'s Mot.App. at A42. On cross motions for summary judgment, the court dismissed plaintiff's complaint in the 1996 action for failure to exhaust administrative remedies. *See Hornback v. United States,* 40 Fed.Cl. 524, 528 (1998), *aff'd,* 178 F.3d 1308 (Fed.Cir.1998).

8. Without further discussion, defendant conclusorily states that the continuing claim doctrine does not apply in this case. Def.'s Mot. at 13. Although plaintiff does not address the issue in his responsive briefing, the court considers the applicability of the doctrine here.

The continuing claim doctrine "operates to save later arising claims even if the statute of limitations has lapsed for earlier events." *Ariadne Fin. Servs. Pty. Ltd. v. United States,* 133 F.3d 874, 879 (Fed.Cir.1998). "In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1456 (Fed.Cir.1997). A continuing claim requires recurring, "individual actionable

plaintiff's delay in filing this action almost twelve years after the accrual of his claim requires the dismissal of this case. *See id.* at 13–14.

Quoting from the complaint that he filed in this case, plaintiff asserts:

> The "taking" occurred at the time Plaintiff's patent application was first *duly* classified under Executive Order 12356. This action is, therefore, timely since the subject matter in that application was first duly classified under E.O. 12356 on or after 22 October 1993, and the applicable statute of limitations allows 6 years after that "taking".

Response to Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(4) (Pl.'s Resp.) at 2 (quoting Complaint at 4).

Plaintiff contends that when the government originally classified the subject matter of plaintiff's patent application,[9] the subject matter was private property, and the Government had no jurisdiction over it. Pl.'s Resp. at 2. Plaintiff states that the original classification was invalid. *Id.*

Plaintiff cites 32 C.F.R. § 159.26(b) as the regulatory authority that "grants the Government the necessary jurisdiction to classify privately developed information, provided that information is disclosed in a patent application which is under a Secrecy Order."[10] *Id.* at 3. Plaintiff adds that section 4–105 of the Industrial Security Manual (ISM) for Safeguarding Classified Information, the implementing directive for E.O. 12356, "mandates the acquisition of a 'proprietary interest' (*i.e.*, a 'taking') of privately developed information as a prerequisite for its classifi-

wrongs." *Brown Park Estates,* 127 F.3d at 1459. The Federal Circuit makes clear that the doctrine does not apply to "a claim based upon a single distinct event, which may have continued ill effects later on." *Brown Park Estates,* 127 F.3d at 1456. *See also Ariadne,* 133 F.3d at 879. A claim is not a continuing claim if it involves "only . . . one alleged wrong by the government," which accrued all at once at one point in time," *Brown Park Estates,* 127 F.3d at 1457, but has produced long term "ill effects that continue to accumulate over time." *Ariadne,* 133 F.3d at 879.

The class of cases in which courts have found that the doctrine applies is limited chiefly to those particular circumstances in which the government has a duty to make periodic payments. *See, e.g., Hatter v. United States,* 203 F.3d 795, 797–98 (Fed.Cir.2000)(diminution of judges' pay by imposition of social security taxes deemed a continuing claim), *rev'd in part on other grounds, United States v. Hatter,* 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001); *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381, 396 (1962) (finding widow's action for disability retirement pay denied to her husband not a continuing claim). *See also Cherokee Nation of Okla. v. United States,* 26 Cl.Ct. 798, 804 (1992) (finding claim that government breached its fiduciary duties in a tribal lands trust relationship by failing to evict trespassers potentially a continuing claim based on the circumstances of each instance of trespass pleaded by plaintiffs). Moreover, in *Aktiebolaget Bofors v. United States,* 139 Ct.Cl. 642, 153 F.Supp. 397 (1957), the court found that defendant continued to export merchandise in violation of its contract and that each export was a separate violation of the contract. *Id.* at 400–02 (court interpreted the contract to license the government to manufacture but not to export antiaircraft guns).

In this case, the court agrees with defendant that the government's imposition of the August 1987 secrecy order, which was renewed by subsequent orders in accordance with section 181 of the secrecy statute, constituted one alleged wrong by the government that withheld the grant of plaintiff's patent from the secrecy order's initial imposition in 1987 until the PTO rescinded it in 1999. The court does not view the periodic renewals of the August 1987 secrecy order as "recurring, individual actionable wrongs," *see Brown Park Estates,* 127 F.3d at 1459, but as one act of imposition producing a harm that continued over a period of time.

9. The original classification of the subject matter of plaintiff's patent application was by Air Force letter dated April 16, 1987. App. to Pl.'s 2/18/99 MSJ at A2. The government did not impose the original secrecy order until August 24, 1987, nearly four and one-half months later. Pl.'s Resp. at 3; Appendix to Motion for Summary Judgment in Favor of Plaintiff and Response to Defendant's Motion to Dismiss filed February 18, 1999 (App. to Pl.'s 2/18/99 MSJ) at A7.

10. The regulation provides that:

> A patent application on which a secrecy order has been imposed [pursuant to the secrecy statute] shall be handled as follows within the Department of Defense: (1) If the patent application contains information that warrants classification, it shall be assigned a classification and be marked and safeguarded accordingly.

32 C.F.R. § 159.26(b) (1982); App. to Pl.'s 2/18/99 MSJ at A18.

cation."[11] *Id.* at 4. Based on this regulatory guidance for classifying information, plaintiff asserts that the secrecy order imposed on his patent application on October 22, 1993 (the October 1993 secrecy order) which expressly stated that "[t]he subject matter is CLASSI-FIED at the level of SECRET" was the first duly authorized classification of his patent application and thus, the date of the taking.[12] Pl.'s Resp. at 3–4.

The parties dispute the legal effect of the government's imposition of the August 1987 secrecy order on plaintiff's patent application in the absence of a proper security classification in accordance with E.O. 12356 and in contravention to the guidelines set forth in the Industrial Security Manual for Safeguarding Classified Information. In considering whether the procedurally flawed imposition of the August 1987 secrecy order nonetheless "fix[es] the alleged liability of the defendant," *see Hopland Band,* 855 F.2d at 1577, and thereby determines the accrual date of plaintiff's cause of action, *see Catawba Indian Tribe of S.C.,* 982 F.2d at 1570, the court turns now to examine the case law.

### d. The Case Law

The court's analysis of the legal effect of the procedurally flawed imposition of the August 1987 secrecy order is informed by the

Federal Circuit's decisions in *Del–Rio Drilling Programs, Inc. v. United States* and *Rith Energy, Inc. v. United States.*

In *Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358 (Fed.Cir.1998), the Federal Circuit reviewed a dismissal by the Court of Federal Claims of plaintiffs' takings claim for failure to state a claim. The Court of Federal Claims found that plaintiffs had refused to concede the validity of the government's actions in denying drilling permits to the holders of mineral leases on Indian tribal lands.[13] *Id.* at 1361. On appeal, the Federal Circuit addressed the questions: (1) whether the government conduct at issue was authorized, and (2) whether the complaint asserted a takings claim or sought damages for a statutory or regulatory violation by government officials. *Id.* at 1362.

In its analysis of the governmental authorization issue, the Federal Circuit explained that certain conduct that can be characterized as "invalid" or "illegal" (and therefore "unauthorized") could, nonetheless, support a takings claim:

> While this court has on occasion referred to "invalid" or "illegal" government conduct as "unauthorized" for purposes of determining whether the conduct may give rise to Tucker Act liability, *see Short v. Hornback* reasons that when the Government classifies information without first obtaining a proprietary interest, the result is the implicit "taking" of the necessary interest. This reasoning is circular: it presupposes that the Government creates jurisdiction for an action by engaging in the very action over which it lacks jurisdiction. Hornback fails to consider that the classification of information over which the Government lacks jurisdiction is simply invalid and subject to challenge under the procedures set forth in the regulations.
> App. to Pl.'s 2/18/99 MSJ at A04–05.

---

**11.** ISM Section 4–105 states:

> It should be noted that ... E.O. 12356 prohibits a User Agency from classifying information over which the Government has no jurisdiction. The proposal or other *material* submitted *may not be classified* by a User Agency *unless:* (i) it incorporates classified information to which the contractor was given prior access, or (ii) *the Government first acquires a proprietary interest in the information.*
> Pl.'s Resp. at 2 (emphasis added); App. to Pl.'s 2/18/99 MSJ at A26.

**12.** Plaintiff also relies on defendant's assertion during prior litigation with plaintiff involving the same August 1987 secrecy order in this case that no taking "had ever occurred" because the original classification of the subject matter of plaintiff's patent application was invalid. Pl.'s Resp. at 2. Plaintiff cites defendant's briefing filed with the Federal Circuit in connection with Mr. Hornback's appeal of the 1992 decision by the District Court for the Southern District of California dismissing his takings claim. *Id.* Specifically, plaintiff points to defendant's statement that:

**13.** Department of Interior officials denied drilling permits to the holders of mineral leases on Indian tribal lands because the tribe had not approved rights-of-way over the land. *Del–Rio Drilling,* 146 F.3d at 1360–61. The Court of Federal Claims also dismissed plaintiffs' breach of contract claim for lack of subject matter jurisdiction. *Id.* at 1362. Although plaintiffs appealed the Court of Federal Claims decision on both the takings and contract claims, *see id.,* only the portion of the Federal Circuit's decision addressing plaintiffs' takings claims is pertinent here.

*United States,* 50 F.3d 994, 1000 (Fed.Cir. 1995); *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 802 (Fed.Cir.1993), we understand those references to require a showing that the conduct was *ultra vires, i.e.,* it was either explicitly prohibited or was outside the normal scope of the government officials' duties. *Neither the Supreme Court nor this court has held that government conduct is "unauthorized," for purposes of takings law, merely because the conduct would have been found legally erroneous if it had been challenged in court.* Accordingly, a court's conclusion that government agents acted unlawfully does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied.

*Id.* at 1363 (citations omitted) (emphasis added). Explaining why certain legally flawed government action does not preclude absolutely a takings claim, the Federal Circuit stated:

If the government appropriates property without paying just compensation, a plaintiff may sue in the Court of Federal Claims on a takings claim regardless of whether the government's conduct leading to the taking was wrongful, and regardless of whether the plaintiff could have challenged the government's conduct as wrongful in another forum.

*Id.* at 1363. Observing that while "in some circumstances it might be more efficient to cure legal defects in the contested governmental action rather than forcing the government to pay for appropriated property," *see id.,* the Federal Circuit reasoned that "if the government has taken property and has done so in a legally improper manner, it has committed two violations of the property-owner's rights . . . . giv[ing] rise to two separate

causes of action," more particularly, a claim for just compensation and an action for the improprieties committed in the course of the taking. *Id.* at 1363–64.

Subsequently, in *Rith Energy, Inc. v. United States,* 247 F.3d 1355 (Fed.Cir.2001), the Federal Circuit addressed *Del–Rio* in affirming the dismissal of a plaintiff's takings claim.[14] The Federal Circuit stated:

In *Del–Rio,* we held that the plaintiff could bring a takings claim without first challenging the lawfulness of the government's action, or establishing the scope of its property interest, in an administrative proceeding. That is so because a takings claim lies, as long as the government's action was authorized, even if the government's action was subject to legal challenge on some other ground.

*Rith,* 247 F.3d at 1365. The Federal Circuit added that "if the plaintiff claims that its property was taken *regardless of* whether the agency acted consistently with its statutory and regulatory mandate, *Del–Rio* stands for the proposition that the takings claim can be litigated in the Court of Federal Claims without the need first to litigate the issue of lawfulness in administrative proceedings before the agency." *Id.* at 1365–66. The Federal Circuit explains, however, that "to the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation, *Del–Rio* does not give the plaintiff a right to litigate that issue in a takings action rather than in the congressionally mandated administrative review proceeding." *Id.* at 1366.

While neither *Rith* nor *Del–Rio* considered the statute of limitations issue presently before the court, the court finds the reasoning

**14.** Plaintiff Rith Energy, Inc. applied for and obtained federal permits to conduct mining operations on two coal mining leases that plaintiff had purchased in Tennessee. 247 F.3d at 1358. After plaintiff had mined for a period of time, its permits were suspended by the Office of Surface Mining Reclamation and Enforcement of the United States Department of Interior (OSM) due to the presence on plaintiff's property of high levels of potentially toxic material that could pollute the area groundwater, a process referred to as "acid mine drainage." *Id.* Unable to develop a plan to OSM's satisfaction for addressing

the acid mine drainage problem at plaintiff's mining site, Rith sought to revise its mining permit. *Id.* OSM denied the request and thereby precluded Rith from any further mining. *Id.* After several unsuccessful challenges, administratively and judicially, to OSM's actions, plaintiff filed a takings claim in the Court of Federal Claims. *Id.* Finding that no compensable taking had occurred, the Court of Federal Claims dismissed plaintiff's takings claim on summary judgment motion. *See Rith Energy, Inc. v. United States,* 44 Fed.Cl. 108, 115 (1999).

of the Federal Circuit in these two cases to be instructive in this circumstance. When a plaintiff alleges that certain government action has effected a taking of property, albeit in a legally improper manner, the Federal Circuit has made clear that a plaintiff may proceed with its takings claim without first resolving in a separate proceeding the issue of whether the government acted lawfully. *Rith,* 247 F.3d at 1365–66; *Del–Rio,* 146 F.3d at 1367. To proceed on a takings claim, however, as the Federal Circuit explains in *Rith,* the gravamen of the plaintiff's complaint must be that its property was taken, notwithstanding the government's wrongful conduct, rather than its claim challenging the government's wrongful conduct. 247 F.3d at 1366.

By permitting a plaintiff to proceed with its takings claim, notwithstanding the legal error committed in connection with the government's action, *Rith* and *Del–Rio* decide that a plaintiff has a legal right to maintain its takings cause of action once the government has acted to effect a taking even if the government acted in a legally improper manner. The determination that a plaintiff can bring suit for a legally flawed taking speaks to the issue of when a plaintiff's cause of action accrues for statute of limitations purposes. *See Catawba Indian Tribe,* 982 F.2d at 1570 (when plaintiff has "a legal right to maintain his or her action" determines when plaintiff's claim first accrues).

Here, plaintiff alleges that the government "withheld [his] patent from issue as authorized by 35 U.S.C. 181, … willfully [took] physical possession of that application and the subject matter contained therein, and … willfully den[ied] him the right to possess a copy of his own patent application." Compl. at 3. Plaintiff asserts that these acts constituted a Fifth Amendment "taking." *Id.* Although the parties dispute when the taking

first occurred, the parties agree that pursuant to section 181 of the secrecy statute, the government first imposed a secrecy order on plaintiff's patent application in August 1987. *See* Def.'s Mot. at 2; Pl.'s Resp. at 3. The imposition of the August 1987 secrecy order withheld plaintiff's patent from issuing, *see* Compl. at 3; Def.'s Mot. at 12–13, and plaintiff does not deny the validity of that secrecy order. *See* Pl.'s Resp. at 4.

Rather, plaintiff's challenge is a technical one. Asserting the invalidity of the original security classification of his patent application in April 1987 because the government had not acquired the proprietary interest in the subject matter as required under E.O. 12356, *see* Pl.'s Resp. at 4, plaintiff claims no taking occurred until a duly authorized classification occurred as specified in the October 1993 Secrecy Order. *Id.* at 3–4. Plaintiff's position, however, is unsupportable under the teachings of *Del–Rio* and *Rith.* That the government's action may have been legally erroneous does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied. *See Del–Rio,* 146 F.3d at 1363; *Rith,* 247 F.3d at 1365–66.

The basis for plaintiff's takings claim is the withholding of his patent from issuance. The government effected that action by the imposition of the secrecy order in 1987. Plaintiff's reliance on the language of the October 1993 secrecy order classifying the subject matter of his patent application "at the level of SECRET" as the first duly authorized classification and, therefore, as the date of accrual of his takings cause of action, is misplaced. *See* Pl.'s Resp. at 4. The government's alleged technical error of improperly classifying the subject matter of plaintiff's patent application in April 1987 did not impair the effect of the August 1987 secrecy order on plaintiff's patent application.[15]

---

**15.** Plaintiff's focus on the government's error in issuing the August 1987 secrecy order also seems misplaced in light of the fact that plaintiff's own actions appear to have contributed to the government's procedural errors in classifying plaintiff's patent application. Plaintiff stated in his deposition that he, not the government, originally placed security markings on his patent application. Def.'s Mot.App. at A4. While employed at McDonnell Douglas, plaintiff desired to present

the subject matter of what would become his patent application at a symposium. *Id.* at A2. Alerted by the security department of his former employer that the subject matter may warrant classification, plaintiff submitted his intended symposium report to officials at Kirtland Air Force Base (Kirtland AFB) for classification guidance. *Id.* at A2–3. The advising official at Kirtland AFB declined to give formal classification guidance without a classification guide, but

The August 1987 secrecy order stated that plaintiff's patent application contained subject matter "which discloses classifiable information." Def. Mot.App. at A11. Notwithstanding the erroneous security classification of plaintiff's patent application four months prior to the imposition of the original secrecy order, the PTO prevented plaintiff's patent from issuing based on the restrictions imposed by the August 1987 secrecy order until the PTO rescinded the order on April 21, 1999. *See id.* at A13–A15. As set forth in the August 1987 secrecy order, the requirements of the original secrecy order were to remain in effect until the rescission or modification of the order by the Commissioner of the PTO. *Id.* at A12. The August 1987 secrecy order further provided that subsequent changes in the security classification of the patent application would not abrogate the effect of the secrecy order. *Id.* (stating that "declassification, in whole or in part, of the subject matter ... does not modify this Secrecy Order"). In fact, plaintiff acknowledges the taking effected by the imposition of August 1987 secrecy order in his complaint, stating:

> On 17 September 1987 the PTO issued a "NOTICE of Allowability" stating that the patent application was in condition for allowance but that: "in view of the secrecy order issued August 24, 1987, under 35 U.S.C. 181 (1952), this application will be withheld from issue during such period as the national interest requires." *After 11 years* the patent continues to be so withheld.

Pl.'s Resp. at 3.

### 3. Conclusion

The imposition of the August 1987 secrecy order on plaintiff's patent application, the

governmental act alleged to have taken plaintiff's property, occurred more than six years prior to the filing of plaintiff's action in January 1999. *See* Compl. at 1; *Fallini,* 56 F.3d at 1383. Plaintiff's takings claim accrued at the time of the imposition of the original secrecy order notwithstanding that the government's action may have been procedurally flawed. *See Del–Rio,* 146 F.3d at 1367. Accordingly, plaintiff's taking claim is barred by the statute of limitations.

### B. Summary Judgment

### 1. Background

Plaintiff has filed multiple lawsuits in this court and in the District Court for the Southern District of California against the United States on various theories of recovery, (including a takings claim) seeking damages for the imposition of the August 1987 secrecy order on his patent application. *See supra* note 4. In January 1999, plaintiff filed this action against the United States seeking compensation for the alleged taking of his intellectual property by the imposition of the August 1987 secrecy order on his patent application. *See* Compl. at 1–3. Defendant has moved for summary judgment in this matter on the ground that plaintiff's takings claim is barred by the doctrines of res judicata and collateral estoppel. Def.'s Mot. at 6–10.

In view of the number of suits filed by plaintiff pertaining to the patent application at issue in this case and in the interest of efficient use of judicial resources, the court turns now to consider whether the doctrines

---

informally advised that the subject matter should be marked secret. *Id.* at A3.

Plaintiff acknowledged that, although the subject matter of the patent application was not classified secret while it was still proprietary to McDonnell Douglas, he believed that it should have been marked secret. *Id.* at A3. Thus, plaintiff explained, "[W]hen I submitted the patent application, I marked it as if it were secret." *Id.* at A4. He correctly observes, however, that his marking the patent application "does not mean that it was classified secret because I have no authority. Only the military—only the defense department can classify a document." *Id.*

Plaintiff also stated at his deposition that his patent examiner advised him that the patent was in a "condition for allowance" but the security markings on the application needed to be addressed first—either by removing them or having a secrecy order imposed. *Id.* at A5. Plaintiff sent a copy of a letter from the patent examiner regarding the security markings on his patent application to a patent attorney at Kirtland AFB which led to a decision by the Air Force Legal Service Agency that the patent application should be marked secret. *Id.* at A5–A6.

of res judicata and collateral estoppel bar plaintiff from further litigation in this case.[16]

### 2. Standard of Review

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. United States Court of Federal Claims Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A movant is entitled to summary judgment if the nonmovant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must draw all reasonable inferences in favor of the nonmovant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. That a case "is a takings case does not affect the availability of summary judgment when appropriate to the circumstances." *Avenal v. United States*, 100 F.3d 933, 936 (Fed.Cir.1996).

### 3. The Doctrines of Res Judicata (or Claim Preclusion) and Collateral Estoppel (or Issue Preclusion)

■ Under the doctrine of res judicata or claim preclusion, "a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Stearn v. Dept. of the Navy*, 280 F.3d 1376, 1380 ( Fed.Cir.2002). *See Alyeska Pipeline Serv. Co. v. United States*, 231 Ct.Cl. 540, 688 F.2d 765, 769 (1982). The doctrine of res judicata is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and ... encourage reliance on adjudication." *Stearn*, 280 F.3d

at 1380 (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). In determining whether a plaintiff's prior lawsuits bar further litigation under the doctrine of res judicata, this court has applied a three-part test specifically considering: (1) whether the parties are legally identical; (2) whether the transactions or events underlying the claims are substantially related; and (3) whether the non-moving party had a "full and fair opportunity to litigate the original claim." *Worthington v. United States*, 50 Fed.Cl. 712, 715 (2001)(internal citation and quotation omitted). A claim is deemed the same claim for res judicata purposes when it rests on all or part of the transaction or series of connected transactions out of which the original claim arose. *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 478 (Fed.Cir.1991). "Whether, based on the facts of the case, a claim is barred by *res judicata* is a question of law ...." *Faust v. United States*, 101 F.3d 675, 677 (Fed.Cir.1996).

■ The doctrine of collateral estoppel or issue preclusion also serves to bar the revisiting of issues that have been fully litigated previously by the same parties based on the same cause of action. *Banner v. United States*, 238 F.3d 1348, 1354 (Fed.Cir.2001); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365–66 (Fed.Cir.2000). A finding of collateral estoppel requires the satisfaction of four factors: (1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. *Banner*, 238 F.3d at 1354; *Jet*, 223 F.3d at 1366 (citing Restatement (Second) of Judgments, §§ 27, 39 (1980)). An issue is actually litigated if "it was properly raised by the pleadings, was submitted for determination, and was determined." *Banner*, 238 F.3d at 1354. "[M]ere disagreement with a legal ruling does not

---

16. Plaintiff declined to address either the res judicata or collateral estoppel issues in his response to defendant's motion, stating that the issues of res judicata, collateral estoppel and the exclusivity of the remedies provided by 35 U.S.C. § 183 were "beyond the scop[e] of the agreement reached by the parties in the STATUS CONFER-ENCE of 5 November 2001 and affirmed in this Courts (sic) ORDER of 6 November 2001." Pl.'s Resp. at 1. On February 28, 2002, the court stated in an order that the interests of justice required that it address those issues and directed further briefing.

mean that a party has been denied a 'full and fair' opportunity to litigate." *Id.* at 1355.

### a. Summary of the Parties' Arguments

Defendant argues that Mr. Hornback is barred by the doctrine of res judicata from relitigating his takings claim based on the government's classification of his patent application as secret and the government's imposition of a secrecy order on plaintiff's patent application. Def.'s Mot. at 7–8. Defendant asserts that plaintiff filed and fully litigated his takings claim in a prior lawsuit. *Id.*

Further, defendant explains that the doctrine of collateral estoppel bars Mr. Hornback from litigating the issue of whether his takings claim is time-barred. *Id.* at 9–10. Defendant reiterates that plaintiff has litigated the statute of limitations issue with respect to his takings claim in a prior lawsuit. *See Hornback,* 1996 WL 368135, at *2. Defendant adds that the doctrine of collateral estoppel precludes Mr. Hornback from revisiting another issue that was fully litigated and decided in a prior lawsuit—specifically, whether § 183 of the secrecy statute provides the exclusive remedy for damages and thereby bars a takings claim. Def.'s Mot. at 10.

Plaintiff argues that the res judicata doctrine does not apply to bar his takings claim here because his 1994 takings claim was based on the April 1987 security classification of the subject matter of his patent application, a classification that plaintiff alleges was invalid. Pl.'s Amended Res Judicata Brief at 2. Plaintiff contends that the takings claim he asserts in this case is premised on the *"valid reclassification"* of the subject matter of his patent application, which was "specified in the *Secrecy Order* of 17 October 1997 . . . but backdated to 10/22/93 with the specification therein." *Id.* at 3.

Plaintiff adds that the collateral estoppel doctrine does not apply with respect to the statute of limitations issue because the gov-ernmental act on which plaintiff bases his takings claim in this case is different. *Id.* at 4–5. Plaintiff explains that, in this case, his takings claim is based on the government's valid reclassification rather than the original invalid secrecy classification of the subject matter of his patent application. *Id.* at 5–6.

Plaintiff further argues that the collateral estoppel doctrine does not apply with respect to whether 35 U.S.C. § 183 provides the exclusive remedy for plaintiff's damages. Plaintiff states that his 1989 suit was based on the August 1987 imposition of the original secrecy order on his patent application. *Id.* at 6. Plaintiff explains that this takings action is premised on the secrecy classification of his property pursuant to Executive Order 12356. *Id.* Plaintiff contends that the *Constant* decision "is not applicable here . . . . [because] Constant's patent application was not so classified. And Section 183 of the Invention Secrecy Act *of 1952* cannot possibly provide a remedy for a classification under E.O. 12356, *which did not exist until 1982." Id.*

### b. Plaintiff's Takings Claim is Barred by Res Judicata

■ In 1989, plaintiff filed an action pursuant to 35 U.S.C. § 183 in the United States District Court for the Southern District of California seeking damages caused by the government's imposition of the 1987 secrecy order on his patent application. *See Hornback,* 1993 WL 528066, at *1.[17] During the litigation, plaintiff also asserted a Fifth Amendment takings claim. *See id.* The district court dismissed plaintiff's complaint and granted summary judgment in favor of defendant on the grounds that: (1) plaintiff failed to present a genuine issue of fact regarding his claimed damages, and (2) plaintiff could not maintain a Fifth Amendment takings claim because § 183 provides the exclusive remedy to inventor-owners for damages claimed as a result of the government's imposition of a secrecy order. *Id.*

---

17. This unpublished opinion is a table decision. Nonprecedential opinions and orders are published periodically as table decisions, *see* Fed. Cir. R.App. V, Internal Operating Procedures 9, Rule 8, and may not be cited as precedent. Fed.R.App. Proc. 47.6(b) (2000). Federal Circuit Rule 47.6 does not, however, preclude the assertion of claim preclusion or issue preclusion based on a decision of the court that is designated as nonprecedential. *Id.*

In July 1994, plaintiff filed another suit in the district court in California alleging that his patent application was subject to a taking requiring compensation under the Fifth Amendment. *Hornback*, 1996 WL 368135, at **1, 2.[18] He specifically alleged that his property was taken when the United States, acting through the Department of the Air Force, classified his invention as secret and the PTO imposed a secrecy order on his patent application. *Id.* at *1. The district court dismissed plaintiff's claim for lack of subject matter jurisdiction and declined to transfer the action under 28 U.S.C. § 1631 to the Court of Federal Claims on the ground that plaintiff's claim was time barred. *Id.* at *2.

Plaintiff filed this action in January 1999 seeking compensation for a taking of his intellectual property. Plaintiff alleges that the government effected the taking by the imposition of a August 1987 secrecy order on his patent application. *See* Compl. at 1, 3. In determining whether the doctrine of res judicata precludes plaintiff from litigating this claim, the court applies the three-part test most recently articulated in *Worthington*, 50 Fed.Cl. at 715 and *Adams*, 51 Fed.Cl. at 59–60.

The court finds that: (1) the parties involved in plaintiff's claims filed in the district court of California in 1989 and 1994 are legally identical to the parties involved in this case; (2) the events underlying plaintiff's takings claim in the 1989 and 1994 actions filed in the district court of California are substantially the same as the events underlying plaintiff's takings claim here; and (3) plaintiff had a "full and fair opportunity to litigate" his takings claim in the lawsuits he filed in 1989 and 1994. Because plaintiff has litigated his takings claim and final judgment has issued on two prior occasions, the doctrine of res judicata precludes plaintiff from relitigating his takings claim. *See Federated Dep't Stores*, 452 U.S. at 398, 101 S.Ct. 2424.

### c. The Statute of Limitations Issue is Barred by Collateral Estoppel

■ Plaintiff filed suit in the district court in California in July 1994 seeking just compensation for the taking of his patent application. *See Hornback*, 1996 WL 368135, at *1. The district court determined that plaintiff's 1994 takings action was time-barred. *Id.* at *2. Affirming the district court's decision on appeal, the Ninth Circuit stated:

> Hornback's claims accrued no later than April 1987, when the Air Force notified him by letter that his invention had been classified as secret. Hornback's contention that his claim accrued much later, when he learned that a "taking" was required to classify his invention as secret is without merit. A cause of action accrues, not when a plaintiff was or should have been aware of potential legal theories, but when a plaintiff was or should have been aware of events giving rise to a cause of action.
>
> Hornback has not demonstrated any fraudulent concealment on the part of the government which would equitably toll the statute of limitations. Because Hornback did not file his complaint until July 15, 1994, more than seven years after the accrual of his cause of action, his claims were time-barred. *See* 28 U.S.C. § 2501. Accordingly, the district court did not abuse its discretion in refusing to transfer Hornback's action to the Court of Federal Claims.

*Id.* at **1, 2 (citations omitted).

In this case, plaintiff seeks compensation from the government for the alleged taking of his patent application by the imposition of the August 1987 secrecy order. *See* Compl. at 1. Plaintiff argues here that his takings claim did not accrue until he learned of the "duly" authorized classification of his patent application. *See* Compl. at 3, 4.

Plaintiff's claim requires this court to consider the same statute of limitations issue that was before the district court in California in plaintiff's 1994 takings action.[19] *See*

---

18. United States Court of Appeals for the Ninth Circuit Rule 36–3 provides that, while unpublished opinions of the Court of Appeals for the Ninth Circuit are not binding precedent, they may be used for res judicata or collateral estoppel purposes. *See* Def.'s Mot. at 8 n. 1.

19. The district court in California found that plaintiff's takings claim accrued when the gov-

*Hornback*, 1996 WL 368135, at *2. The statute of limitations issue was actually litigated and decided in the proceeding in the district court of California. *Id.* The issue of whether Mr. Hornback's claim was time-barred was necessary to the decision of the district court in California to dismiss plaintiff's 1994 takings claim rather than to transfer his claim pursuant to 28 U.S.C. § 163. Moreover, as addressed in the Ninth Circuit's unpublished opinion, Mr. Hornback argued his position on the timeliness of his takings claim and thereby had an opportunity to fully and fairly litigate the statute of limitations issue. *See Hornback*, 1996 WL 368135, at *2.

Because the four factors of the collateral estoppel doctrine, as articulated by the Federal Circuit, have been satisfied in this case, the court finds that the plaintiff is precluded from relitigating the issue of whether his takings claim is time-barred. *See Banner*, 238 F.3d at 1354; *Jet*, 223 F.3d at 1366.

d. The Issue of the Exclusivity of the Statutory Remedy is Barred by Collateral Estoppel

 Defendant draws the court's attention to a 1989 case filed by plaintiff in which he alleged a Fifth Amendment taking of his patent application. *See* Def.'s Mot.App. at A52–A59 (*Hornback v. United States*, Civ. No. 89–1914–R (M), slip op. at 1–3 (S.D.Cal. Oct. 2, 1992)). Affirming the decision of the district court in California dismissing plaintiff's case, the Federal Circuit held that Mr.

Hornback's takings claim could not lie "because 35 U.S.C. § 183 provides the exclusive remedy to inventor-owners for damages claimed as the result of a secrecy order imposed by the government." *See Hornback v. United States*, 1993 WL 528066, *1 (Fed. Cir. Dec.22, 1993).

Defendant argues that plaintiff is precluded from asserting his pleaded takings claim in this case because the secrecy statute provides the exclusive remedy for his damages. Def.'s Mot. at 10, 11. Defendant asserts that because Mr. Hornback litigated this issue in his 1989 takings case, he is precluded by the doctrine of collateral estoppel from litigating the issue again here. *Id.* at 10.

The court now considers whether the doctrine of collateral estoppel applies to bar plaintiff from litigating this issue.

The secrecy statute provides a right to compensation to a patent applicant whose patent is withheld by the imposition of a secrecy order.[20] 35 U.S.C. § 183. Section 183 of the secrecy statute provides that an applicant whose patent is withheld in conformance with the secrecy statute "shall have the right ... to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure." *Id.* Upon presentation of a claim by an applicant to the responsible agency, the agency "is authorized ... to enter into an agreement with the

---

ernment first classified the subject matter of plaintiff's patent application as secret in April 1987. *Hornback v. United States*, 1996 WL 368135, at *1. In this case, however, the court determined that plaintiff's takings claim accrued when the government imposed the original secrecy order on plaintiff's patent application in August 1987, nearly four and one-half months after the district court's determination regarding the date of accrual. That the district court in California determined that plaintiff's takings claim accrued prior to the date of accrual determined by the court in this case does not impair the application of the collateral estoppel doctrine to the statute of limitations issue here. The particular outcome obtained by a party in prior litigation does not vitiate the application of the collateral estoppel doctrine if the issue in question was actually litigated, was necessary to the resulting

judgment, and was fully and fairly litigated. *See Banner*, 238 F.3d at 1354, 1355.

**20.** The right to compensation accrues at the time the patent applicant is notified that his application is otherwise in condition for allowance. 35 U.S.C. § 183. The right to compensation ends six years after a patent is issued on the withheld application. *Id.*

In addition to a patent applicant's right to compensation, Section 183 of the secrecy statute also provides a right to compensation to the owner of any patent issued upon an application that was subject to a secrecy statute secrecy order. *Id.* After the date of patent issuance, the patent owner may bring suit in the United States Court of Federal Claims "for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure." *Id.*

388

applicant ... in full settlement for the damage and/or use," *id.*, and such settlement "shall be conclusive for all purposes notwithstanding any other provision of law to the contrary." *Id.* If full settlement of the patent applicant's claim cannot be effected, the agency may award and pay to the applicant a sum not exceeding 75% of the amount deemed by the agency to constitute just compensation. *Id.* The patent applicant may bring suit against the United States either in the United States Court of Federal Claims or in the United States District Court for the district in which the patent applicant is a resident "for an amount which when added to the [agency] award shall constitute just compensation for the damage and/or use of the invention by the Government." *Id.*

During briefing in Mr. Hornback's 1989 case before the district court in California seeking damages in connection with the government's imposition of a secrecy order on his patent application, defendant argued in its Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (Def.'s 7/15/92 Mem.) that plaintiff's takings claim could not lie. Def.'s 7/15/92 Mem. at 19. As authority for the government's position, defendant relied on the decision of the Claims Court in *Constant v. United States*, 16 Cl.Ct. 629 (1989), *aff'd*, 884 F.2d 1398 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989).

In *Constant*, a patent applicant filed suit seeking compensation on the ground that the secrecy order imposed on his patent applica-

tion constituted a Fifth Amendment taking. 16 Cl.Ct. at 630, 631–632. While acknowledging that "the imposition of the security order ... delayed the issuance of a patent to plaintiff and imposed other restrictions," *id.* at 632, the Claims Court held that "the issuance of a secrecy order [pursuant to section 181] is not per se a taking." *Id.* at 634. Stating that "[a]n inventor whose patent has been withheld under a secrecy order has a right created by statute ... to obtain compensation from the United States, and the [secrecy] statute sets forth procedures whereby this right may be realized," *id.* at 632, the Claims Court observed that "diminution in value of [a patent applicant's] invention and inability to exploit his invention are compensable elements of a claim under section 183, not under the Fifth Amendment." *Id.* at 634. Citing several of its earlier decisions,[21] the *Constant* court further noted that "not every act of the Government which impinges on property rights constitutes a compensable taking" under the Fifth Amendment. *Id.* at 632.

Mr. Hornback responded to defendant's arguments in his Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Motion for Summary Judgement (Pl.'s 7/27/92 Opp.) arguing that by imposing the secrecy order on his patent application, the government infringed upon his right to obtain a patent. Pl.'s 7/27/92 Opp. at 2. Citing *Leesona v. United States*, 220 Ct.Cl. 234, 599 F.2d 958 (1979), plaintiff asserted that the government owed compensation for infringing upon his right to obtain a patent.[22] Pl.'s

21. The court in *Constant* specifically cited *Radioptics, Inc. v. United States*, 223 Ct.Cl. 594, 621 F.2d 1113, 1126–29 (1980) (imposed security classification did not sufficiently interfere with plaintiff's property rights to constitute a Fifth Amendment taking); *Mosca v. United States*, 189 Ct.Cl. 283, 417 F.2d 1382, 1385–86 (1969) (finding no taking of plaintiff's patented product by regulatory agency's wrongful denial of plaintiff's application for product registration based on regulations having nationwide application); and *Franco–Italian Packing Co. v. United States*, 130 Ct.Cl. 736, 128 F.Supp. 408, 414 (1955) (government's taking of an owner's property for public use may require compensation, but government's infringement of owner's property to protect public welfare is permissible exercise of police power). 16 Cl.Ct. at 632.

22. The *Leesona* case addresses the proper measure of damages under 28 U.S.C. § 1498, which provides the exclusive remedy for patent infringement by the government. 599 F.2d at 964. In *Leesona*, the Court of Claims observed:

The theory for recovery against the government for patent infringement is not analogous to that in litigation between private parties. When the government has infringed, it is deemed to have "taken" the patent license under an eminent domain theory, and compensation is the just compensation required by the [F]ifth [A]mendment. Title 28 U.S.C. § 1498 contains no directions or limitations as to the grant of damages other than its mandate of "reasonableness" and "entirety."

*Id.* The version of 28 U.S.C. § 1498 to which the *Leesona* decision referred provided, in pertinent part:

7/27/92 Opp. at 2. Additionally, plaintiff urged that the facts of *Constant* were distinguishable because the secrecy order in that case was rescinded three months before the complainant's patent application was in condition for allowance and thus, no taking had occurred. Pl.'s 7/27/92 Opp. at 3, 5. Finally, plaintiff contended that the *Franco–Italian Packing Co.* case,[23] one of the cases cited by the court in the *Constant* decision, was inapplicable because the case involved a war-time seizure rather than a peace-time act. Pl.'s 7/27/92 Opp. at 16.

The doctrine of collateral estoppel precludes the revisiting of issues if: (1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. *Banner*, 238 F.3d at 1354; *Jet*, 223 F.3d at 1366 (citing *Restatement (Second) of Judgments*, §§ 27, 39 (1980)). Defendant contends that plaintiff's takings claim implicates the same issue—whether the secrecy statute provision, 35 U.S.C. § 183, provides the exclusive remedy to an inventor-owner for damages caused by the imposition of a secrecy order—presented in plaintiff's 1989 takings case before the district court of California. *See* Def.'s Mot. at 10, 11.

The court agrees. The issue of whether the secrecy statute provides a complete remedy was not only presented in plaintiff's 1989 takings case, but was actually litigated because, as demonstrated by the parties' briefing in the 1989 case, the issue "was properly raised by the pleadings, was submitted for determination, and was determined." *Banner*, 238 F.3d at 1354. The determination of the issue was necessary to the district court's decision dismissing plaintiff's 1989 case on the grounds that: (1) Mr. Hornback failed to present a genuine issue of fact regarding the damages claimed by him under 35 U.S.C.

§ 183, and (2) Mr. Hornback's Fifth Amendment claim was inappropriate because the secrecy statute provided the exclusive remedy to an inventor-owner for damages. *See Hornback*, 1993 WL 528066, at *1; *Hornback v. United States*, No. 89–1914–R(M), slip op. at 5–6 (S.D.Cal. Oct. 1, 1992). Plaintiff does not dispute that he had a full and fair opportunity to litigate this issue before the district court in California, and the Federal Circuit has observed that "mere disagreement with a legal ruling does not mean that a party has been denied a 'full and fair' opportunity to litigate." *Banner*, 238 F.3d at 1355.

Finding that the four factors of the collateral estoppel doctrine have been satisfied, the court determines that the collateral estoppel doctrine applies to preclude plaintiff from relitigating here the issue of whether 35 U.S.C. § 183 provides the exclusive remedy to an inventor-owner for damages caused by the imposition of a secrecy order.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment Pursuant to RCFC 56(b) for Res Judicata, or in the Alternative, to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(4), both motions having been considered, is GRANTED as to both motions. The Clerk of Court shall enter judgment for defendant. Each party shall bear its own costs.

IT IS SO ORDERED.

---

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
28 U.S.C. § 1498(a) (1976).

**23.** *See Franco–Italian Packing Co. v. United States*, 130 Ct.Cl. 736, 128 F.Supp. 408 (1955).